## Case No. 15,326.

### UNITED STATES v. HATHAWAY.
### SAME v. TUTTLE.

[3 Mason, 324.] 1

Circuit Court. D. Maine. May Term, 1824.

SHIPPING — PUBLIC REGULATIONS — TONNAGE AND LIGHT DUTIES — LIABILITY OF CONSIGNEE — SHIPS FROM BRITISH COLONIES.

1. Where, by mistake, fraud, or accident, the tonnage and light duties, payable by law, are not paid by the owner of a vessel, an action of debt lies against him to recover them.

2. But not against a mere consignee of the vessel, for he has no interest or special property in the vessel.

[Cited in Knox v. Devens, Case No. 7,905; The George T. Kemp, Id. 5,341.]

3. Neither by the British treaty of July 3, 1815 [8 Stat. 228], nor by any act of congress, nor by the president's proclamation of 24th August, 1822, are British ships, coming from ports in British colonies, entitled to enter American ports, on payment of the same tonnage and light duties as American vessels; but they are to pay the full duties on foreign vessels. The treaty of 1815 applies only to vessels coming from European ports.

Error to the district court of the United States for the district of Maine.

Debt [against Warren Hathaway, and Tuttle] for tonnage and light money, of 50 cents per ton, as due from certain British vessels coming from Novia Scotia. Plea, nil debet, upon which a trial was had, [case unreported,] and a bill of exceptions taken at the trial, to the opinion of the court given pro forma, in order to bring the points upon a writ of error to the circuit court.

Mr. Orr, for the defendants, made three points: (1) That no action of debt lay in such a case against any person, though owner of the vessel, even admitting the duties due and unpaid; (2) that if debt would lie against the owner, it did not lie against a person who was only consignee of the vessels; (3) that upon a true exposition of the acts of congress, no higher tonnage duties were due on vessels coming from the provinces, than from European British ports, both being, by the treaty of 1815, and the acts of congress, put on the same footing.

Mr. Shepley, U. S. Dist. Atty., argued: (1) That debt did lie in such a case as this for duties, and cited U. S. v. Lyman [Case No. 15,647]. (2) That it lay against a consignee, as the substitute for the owner; and for this he cited Attorney General v. Weeks, Bunb. 224. (3) That the acts of congress made vessels coming from British ports in the provinces and colonies liable to the tonnage and light duties of 50 cents per ton. He cited all the acts of congress on the subject, viz.: Act July 20, 1789, c. 3, § 1 [1 Stat. 27]: Act July 20, 1790, c. 30 (57) [1 Stat. 135]; Act March 2, 1799, c. 128, § 63 [1 Story's Laws, 573; 1

---

1 [Reported by William P. Mason. Esq.]

Stat. 627, c. 22]; Act March 27, 1804, c. 57, § 6 [2 Stat. 300]; Act July 1. 1812, c. 112, § 3 [2 Stat. 768]; Act March 3, 1815, c. 758, § 1 [4 Bior. & D. Laws, 824; 3 Stat. 224, c. 77]; Act March 3, 1819, c. 75, § 2 [3 Stat. 510]; British Treaty of July 3, 1815, art. 2 [8 Stat. 228]; Act April 27, 1816, c. 107, §§ 6, 8 [3 Stat. 314]; Navigation Act of April 18, 1818, c. 65, § 1 [3 Story's Laws, 1677; 3 Stat. 432]; Act May 15, 1820, c. 122, § 1 [3 Story's Laws, 1800; 3 Stat. 602]; Act May 6, 1822, c. 56, § 1 [3 Story's Laws, 1847; 3 Stat. 681]; President's Proclamation of August 24, 1822.

STORY, Circuit Justice. Upon the first point made at the bar I have no difficulty. If the tonnage and light money, by fraud, accident, or mistake, remained unpaid by the owner, when legally due, my opinion is, that this is a proper form of action to enforce the payment. The general principle was much discussed in U. S. v. Lyman [Case No. 15,-647], and to that opinion I deliberately adhere. It is true, that the act of 1799, c. 128, § 63 [1 Story's Laws, 629; 1 Stat. 675, c. 22], provides, "that the duties imposed by law on the tonnage of any ship or vessel shall be paid to the collector, at the time of making entry of such ship or vessel; and it shall not be lawful to grant any permit, or unlade any goods &c. whatever from such ship or vessel, until the said tonnage duty is first paid." But this is merely directory to the collector, and no penalty or forfeiture for the non-observance of the provision is inflicted. Surely, it will not be contended, that if the collector should, by mistake, grant a permit to unlade before these duties were paid, it would be so far illegal, as to forfeit the goods or the vessel, within the 50th section of the revenue act of 1799, c. 128 [1 Story's Laws, 617; 1 Stat. 665, c. 22]. To say, that the United States cannot recover duties, not paid to them, by any action, is in effect, to assert that they have rights without a remedy. If there is any remedy, it is an action or information of debt.

The second point is, whether the action lies against the consignee of the vessel, or against the owner only. My opinion is, that it lies only against the owner. It is a charge on the vessel itself, and is to be borne by the proprietor thereof. A mere consignee is not, in any just sense of law, a general or a special owner. The act of 1790, c. 30, § 1 [1 Stat. 135], provides, that on all vessels of the United States, &c. &c., a certain tonnage duty shall be paid; "and on the other ships or vessels at the rate of 50 cents per ton." The act of March 27, 1804, c. 57, § 6 [2 Stat. 300], provides, that a duty of 50 cents per ton, to be denominated "light money," shall be levied and collected in the same manner as tonnage duties, "on all ships and vessels not of the United States, which, after &c., may enter the ports of the United States." It is clear from these provisions, that the charge is confined to the vessel, and binds

the owner; and in no respect applies to the importer of the cargo, or the consignee of the vessel; consequently the court cannot extend the charge to any person but the owner, who, in all cases of this nature is, by implication, personally bound, as the vessel itself is incapable of payment.

The case of Attorney General v. Weeks, Bunb. 223, 224, has been cited in support of a different doctrine. That case turned altogether upon the construction of acts of the British parliament respecting importations. It was an information of debt for nonpayment of duties. One question was, whether, in such an information of debt for duties, any person can be charged but the actual importer. The court held: "That in such a case the person to be charged as importer, must have such an interest in the goods, as to be liable to pay the duties, and it will not extend to a mere agent or servant. But if he is jointly interested with another, the crown may recover the whole against one &c. &c. A factor for a person abroad is in this case undoubtedly liable, because the crown cannot get at the principal; and a factor for a merchant here has some sort of interest in the goods, and has some share and allowance for his factorage, and has a special property in the goods. He is to take the goods and pay the duties, and therefore must be taken to be the importer; aliter, in case of a mere agent or servant." The most, that can be said of this case, is, that a factor under the British laws is an importer within in the sense of those laws, as having a special property in the goods. But a consignee of the vessel has a mere agency, and no special property, and therefore is not in the same predicament.

As to the third point, I am of opinion, that the tonnage duties &c., payable on foreign vessels, are not changed by the British treaty of July 3, 1815, or the acts of congress and the president's proclamation pursuant thereto, so far as respects vessels coming from British colonies. The treaty of 1815, putting British vessels, coming into our ports, as to duties and charges, on the same footing as American vessels, extends to vessels coming from European ports, and not to vessels coming from the West Indies, or the British possessions in North America. The act of 1816, c. 107, § 6 [3 Stat. 314], continued the existing tonnage duty; and authorized the repeal of the discriminating duties, tonnage, as well as others, created by that act, in the manner provided by the act of 1815, c. 758 [4 Bior. & D. Laws, 824; 3 Stat. 224, c. 77]. The latter act authorized the president to announce the repeal, when he was satisfied, that the countervailing and discriminating duties of the foreign nation, in whose favour the repeal should apply, were repealed by such nation. The act of May 6, 1822, c. 56 [3 Stat. 681], authorized the president, by proclamation, to open trade and intercourse with the British colonies under such reciprocal rules

and regulations, as he might make, notwithstanding the prohibitions of the navigation act of April 18, 1818, c. 65 [3 Story's Laws, 1677; 3 Stat. 432], and the supplementary act of May 15, 1820, c. 122 [3 Story's Laws, 1800; 3 Stat. 602], which closed such trade and intercourse. Accordingly, the president, by his proclamation of the 24th August, 1822, exercised this authority; and thereby, among other things, opened trade and intercourse with the British North American provinces through certain ports thereof, under certain rules and regulations, viz., that the vessels should be British or American built, and British armed and manned, and the goods imported from such ports should be of the growth, produce, or manufacture of such provinces. The navigation acts, and their suspension by this proclamation, did not in any manner affect the question of discriminating tonnage and other duties; but left these duties in full force under the general laws. Nothing has ever been done, as to the repeal of these duties, by the president, under the act of 1815, or the act of 1816, already adverted to. The result of this summary examination of the treaty, the laws, and executive acts is, that the tonnage duty of 50 cents per ton on foreign vessels, remains in full force, as to British vessels coming from the British provinces in North America.

The judgment in the case of U. S. v. Tuttle is therefore affirmed, as he is a mere consignee, and not an owner; and the judgment in the Case of Hathaway is reversed, and judgment is to be entered for the United States, for the amount of the foreign tonnage duties, &c. Judgment accordingly.