Hemphill, Ch. J.
The duties sued for accrued under the act of 1840, altering the several acts to raise a public revenue by import duties, (p.35, Laws ■of 1840.) This imposed an ad valorem duty of fifteen per cent, on all articles not made the subject of specific duties, (sec. 1st.) That the importer was liable under this law for the duties is not questioned; the only matter of doubt is whether they can now and in this form be recovered.
The defendants have not appeared, at least they have made no argument, either orally or by brief, and we must explore the subject as well as we can without their assistance.
The counsel for the appellant states that the objections to the action are supposed to be twofold, viz:
1st. That the State has no right since annexation to continue the prosecution of a suit for the collection of duties due on imports.
2d. That this form of action cannot be used, since the statute under which the duties accrued had provided a different remedy.
It is unnecessary to notice at length the first objection. There can be no doubt that the duties which accrued on imports prior to the 16th February, 1846, were due and payable to the Government of the late Republic, and there can be as little that the State succeeded to the rights and claims of the former •Government. This was, in effect, decided in the case.of Cocke v. Calkin & Co., 1 Tex. Reports. The right of the late Republic to these duties, as we have before said, is not to be disputed. This right was not affected or impaired but affirmed by the Constitution, (20th sec., Genl. Provisions.) A suit was instituted before the change of Government to maintain this right, and all suits were required to be transferred to the proper court of the State having jurisdiction of the subject-matter. (Schedule, sec. 2.1
Several of the States, prior to the adoption of the Constitution of the United Slates, had their revenue laws imposing duties on imports, and no case has been cited, noram I aware of any in which the right of the States to collect these, after the adoption of the Constitution, if any still remained due, was ever doubted.
There is more difficulty in the second objection raised, viz, whether the liability of the importer can be enforced in the ordinary form of a proceeding for the recovery of a debt, or whether the form of remedy specified in the statute must be exclusively pursued.
Quite a number-of authorities have been cited in the brief of the attorney general, but, as the subject cannot now be fully discussed, I will refer to but very few of them. There can, I presume, be no question that if a tax were imposed and no special mode provided for its collection, the Government could resort to her own courts, and in the ordinary form of suits for debt between individuals sue for and recover the claims due her and fixed by law. This is but a common right, and of which, it seems to me, she cannot be deprived, unless the mode specified is in terms or by clear implication exclusive of this original right.
There are no cases in the courts of the last resort in which a question precisely similar to the one now presented lias been adjudicated. But in the Circuit Court, presided over by Mr. Justice Story, whose eminent qualifications as a jurist are admitted throughout and beyond the realms of English jurisprudence, similar questions on a like statute have been presented and solemnly ■determined. The volumes containing full reports of these decisions are not *194 before me; the substance can be gleaned only from such digests as are within the reach of the court. The first case is that of the United States v. Lyman, reported in 1st Mason, 482, and appears to have been an information or action of debt for duties due on goods introduced into the United States in violation of the regulations of the act of 1799. That act contained many strin-f ent provisions for the collection and enforcement of duties, forfeitures, &e. ts provisions have been examined by the counsel acting for the attorney general with much attention,'and a comparison has been drawn between various sections of that act and those of the act of the Republic of 1840. I have glanced at most if not all of the sections of both statutes referred to, and the aualysis of them as stated by the counsel is substantially correct. In his brief he says that the 50th section of the act of 1799 prescribed the forfeiture of all goods landed without a permit; the 51st, that of all goods removed from the wharf without the consent of the inspector; the 66th, that of all goods fraudulently invoiced; the 67th, that of all goods found in packages not corresponding with the entry; the 08th, that of all dutiable goods found concealed; and the 27th, 82d, and S4tli, that of all goods introduced contrary to law in other respects. The 02d section corresponds with the 2d section of our act; the 08th section with our 15th section; the 2Glh, 56th, and 68th, with our 16th section; but the provisions of these sections and of others before mentioned are far more express and direct in prescribing the forfeiture of goods illegally imported than the act of the Republic. Yet it was under this statute of 1799, that inflicted so many and such severe penalties for its violation and evasion, that Judge Story, in the case above cited, decided that debt would lie in favor of the United States against an importer for duties on the goods imported; that debt would lie against the importer for duties on smuggled goods; so where, by mistake, accident, or fraud, no bond is given to secure them; so where short duties only have been paid. “The duties accrue by the importation with the intent to unlade, and immediately upon the importation the duties become a personal charge and debt upon the importer.” “A bond taken at the custom-house to secure the duties due by the importer is not an extinguishment of the debt so accruing, but merely a collateral security for its payment.”
An information of debt or in the nature of a bill of discovery and account is a proper remedy for the United States in ease goods are smuggled, or by mistake, accident, or fraud, no bond for the iiaymeut of duties lias been given, or where the bond has been lost or destroyed. (Vide. 2 U. S. Dig., Debt, Nos. 47, 48, 49, 52; ©pinions of the Attorney General, U. S., p. 225.}
In the case of United States v. Hathaway, 3 Mason. 324, the decision was to the same effect. The statute authorized the collector to refuse a permit to unlade goods until the tonnage duties on the vessel were paid; yet it was held that where, by fraud, mistake, or accident, the tonnage and light duties payable by law are not paid by the owner of the vessel, an action of debt lies against him to recover thereon. (2 U. S. Dig., Debt, No. 51.)
There were summary remedies provided for the collection of the duties, enforcement of forfeitures, &c., under the act of 1799, as there are under ours in specified cases; but it was, in effect, held in these cases that the Government was not restricted to these specific, peremptory, and in some cases extrajudicial remedies, but that where these could not be pursued the Government was not thereby to be entirely defeated in the assertion of her rights nor the smuggler to be exempt from the burden by law imposed alike and to be borne by all.
The defendant cannot claim that the duties should have been collected under the second section of the act. That applies only to goods regularly entered at the custom house. There are some sections which authorize the revenue officers to seize upon any goods upon which they may suspect that the duties have not been paid, and where the goods are found concealed their forfeiture is authorized. But the case as stated in the petition appears to be one in which there was no attempt by the officers at the time of importation to collect the duties; at least that is to be presumed. They were not collected, and the demurrer admits they were not paid. The goods had, in all probability, in 1S45, passed- *195 beyond the reach of the officers, and no other remedy was left to the Government than suit in the ordinary mode.
Note 78. — By the acts admitting Texas into the Union, extending over it the laws of the United States, &n„ on the 2Dth December, 1845, the old system of Government, so far as it conflicted with the Federal authority, was abrogated. (Lee v. King, 21 T., 577.)
It appears from the cases cited that where the duties are by accident, fraud, or mistake' not paid, an ordinary action for the debt would lie on the behalf of the Government. The defendant is charged in the petition with having' introduced these goods in evasion of the revenue laws. Immediately upon their importation the duties became a personal charge, which lie was liable to pay, and upon which suit in the ordinary mode couid be instituted if other remedies had, by fraud, accident, or mistake, been lost. What may be ■the reasons why the goods were not seized on importation and held subject to trial can, in the present state of the record, be the subject only of conjecture.
The officers may have been prevented by their own mistakes, or the fraud of the party or the hostility of public opinion, and the danger to be incurred in the attempt to discharge a duty and enforce a right regarded, perhaps, as extremely odious. However this may be, the fact that the duties were not paid as late as 1845 is evidence of itself that this was the only remedy which could then, at least, be pursued by the Government. And wc are of opinion that the suit was well brought, and the judgmeut sustaining the demurrer is ordered to be reversed and the cause remanded.
Reversed and remanded.